UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

EDMUND DURFEE,                              :
        Plaintiff,                    :
                                       :
        v.                            :     C.A. No. 16-079M
                                       :
NANCY A. BERRYHILL, ACTING                 :
COMMISSIONER OF SOCIAL SECURITY,           :
        Defendant.                    :

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Before the Court is Plaintiff Edmund Durfee's motion for reversal of the decision of the

Commissioner of Social Security (the "Commissioner"), denying Supplemental Security Income

("SSI") under § 1631(c)(3) of the Social Security Act, 42 U.S.C. § 1383(c)(3) (the "Act").

Plaintiff argues that the Administrative Law Judge ("ALJ") erred in failing to incorporate

Plaintiff's use of a cane into either the hypothetical addressed to the vocational expert ("VE") or

the Residual Functional Capacity ("RFC") determination that formed the basis for the finding of

no disability.[1]  Plaintiff also argues that the ALJ's evaluation of Plaintiff's credibility was so

skimpy and ungrounded in substantial evidence as to require remand for a do-over.  Defendant

Nancy A. Berryhill asks the Court to affirm the Commissioner's decision.

The matter has been referred to me for preliminary review, findings and recommended

disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  Having reviewed the entire record, I find that

the ALJ's findings are well supported by substantial evidence and any error is harmless;

accordingly, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner

---

[1] "RFC" refers to "residual functional capacity."  Residual functional capacity is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting."  20 C.F.R. § 416.945(a)(1).

(ECF No. 12) be DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 14) be GRANTED.

## I.   Background

Plaintiff is a "younger person" in the parlance of the Act, aged 48 at the alleged onset of disability on October 12, 2012. He ended his education in ninth grade and last worked in 2007 doing auto-body deliveries; that job ended when he refused to drive in the snow. Tr. 348. He lives with his wife of thirteen years in a home owned by his father. Tr. 42, 348. While he and his wife have no children, one entry states that he is "currently taking care of his sisters children and that this is big stressor in his life." Tr. 420. His first disability application was denied by an ALJ's decision dated October 11, 2012. Tr. 65. With the prior period foreclosed by that adverse decision, the pending application alleges onset as of the next day. Tr. 16. Pain in his lumbar and cervical spine caused by degenerative disc disease with radiculopathy is the principal reason that Plaintiff contends he cannot work.[2] The focus of this appeal is on Plaintiff's use of a cane for the three years preceding the ALJ hearing; Plaintiff contends that the cane is necessary in light of his spinal impairment. While the ALJ accepted that degenerative disc disease with radiculopathy is a severe impairment in his Step Two findings, Tr. 18, he did not include accommodation of Plaintiff's need for the cane in either his VE hypothetical or his RFC.

The administrative record is loaded with the results of MRI and X-ray studies confirming disc degeneration in both Plaintiff's lumbar and cervical spine, together with at least one nerve study confirming mild chronic radiculopathy; the record also establishes that, prior to the current date of onset, Plaintiff has had back surgery (lumbar and cervical discectomy). Tr. 21. The record reflects Plaintiff's persistent complaint that his back pain was "intolerable." Tr. 817. For

---

[2] Plaintiff also alleged mental impairments. Because he has not placed them in issue on this appeal, they are not discussed in this report and recommendation.

example, in February 2014, Plaintiff was hospitalized after he overdosed on Xanax because he had fallen and hurt his back; he told providers at Newport Hospital that he felt so overwhelmed by the pain that he wanted to take his own life. Tr. 548-77; see Tr. 605 ("I want to die because I can't take this back pain anymore."). Nevertheless, the treatment Plaintiff received for this pain during the period of alleged disability is somewhat limited. For example, he was given the first of a set of spinal injections in March 2013 and told he should follow-up for a second injection, which could be postponed if the pain improved; however, the record does not reflect that he ever came back. Tr. 323. Similarly, he sometimes declined pain medication and consistently declined physical therapy, saying he had tried both and both had failed. Tr. 611, 833. The record includes at least one notation that "[n]o doctor is telling pt that he can not work." Tr. 348.

Throughout the treating record are repeated observations by an array of treating sources that Plaintiff used a cane. E.g., Tr. 350, 354, 374-75, 832. Plaintiff brought his cane to the ALJ hearing and testified that he had been using it for three years. Tr. 46. In his testimony, he confirmed that no treating source had recommended or prescribed the cane, averring that "[i]t was helpful to me. I did it myself. And then the doctor said that was a good choice to have the cane with you at all times." Tr. 47. Plaintiff did not identify the "doctor" referred to in this statement, but also said that the conversation with the "doctor" occurred, "[w]hen I went into his office with the cane . . . about three years ago." Id.

Consistent with Plaintiff's testimony, there is no treating record reflecting any provider prescribing or recommending the use of a cane; nor is there any medical documentation establishing that any provider opined that the cane was medically necessary or required. Inconsistent with Plaintiff's claim that a "doctor" encouraged him to continue to use the cane, no such reference appears in any of the treating notes. Typical of the record references to the cane

are 2013 notes of the treating team at Newport Hospital, which state, "Pt reports he walks with a cane just for added support." Tr. 416. During his stay at the Newport Hospital, Plaintiff requested and was allowed to use a walker, although nursing observations record that he was seen "ambulating with or without walker." Tr. 420. At discharge, the Hospital notes state, "Pt. left unit ambulatory, accompanied by his wife;" there is no mention of the need for a cane or a walker. Tr. 421. During another hospitalization in 2014, Plaintiff used a walker and asked for a wheelchair, which he was allowed to have while an in-patient; however, his discharge instructions state, "ambulation allowed." Tr. 660-61, 739. There is no mention of the use of a walker, wheelchair or cane. Similarly, when Plaintiff saw a neurologist in 2013, she observed, "ambulates w/ cane" and recorded his complaint of "left leg weakness;" nevertheless, on examination, she found that he had "no difficulty with gait or walking." All of her findings related to gait, posture, station and strength were normal. Tr. 374-76, 381; see Tr. 379 ("ambulates independently. Gait . . . normal"). And when he was examined at the Brain and Spine Institute, the treating provider noted, "patient walks with slightly antalgic gait with the assistance of a cane," yet all of her findings on examination with respect to strength, range of motion and coordination were normal. Tr. 833. She made no recommendation that use of the cane should be continued.

Plaintiff's use of the cane was specifically noted by the state agency reviewing physicians at the initial and reconsideration phases of the administrative proceeding. See Tr. 96 (in summarizing of record, Dr. Ricardo Ramirez notes that Plaintiff observed "walking with cane"); Tr. 110 (in summarizing record, Dr. Thomas Bennett cited neurologist's observation that Plaintiff "ambulates with a cane").[3] Both Dr. Ramirez and Dr. Bennett provided function-by-

---

[3] Frequently, the physician doing the file review at the reconsideration phase simply parrots the notes made by the physician who performed the initial review. That is not so here. Dr. Bennett's notation about the cane is drawn

function opinions – yet neither opined that Plaintiff required an additional accommodation for the use of a cane, walker or other assistive-walking device. Tr. 93-95. And Dr. Scott Keigwin, Plaintiff's primary care physician, provided an opinion that does not mention that Plaintiff is limited in that he requires a cane for ambulation.[4] Tr. 827-28.

The ALJ's decision reflects that he considered all of the foregoing evidence: it specifically discusses the treating sources whose notes reflect that Plaintiff was observed using a cane. Tr. 22 (noting Brain and Spine Institute observation that "claimant walked with a slightly antalgic gait with the assistance of a cane," yet all objective testing of strength, coordination, range of motion, and stability normal); Tr. 23 (noting mental health nurse observed claimant "walked with a cane"); id. (noting Mental Health Center observation that "he was using a cane"); Tr. 24 (noting Plaintiff's testimony that use of cane for three years was something Plaintiff "did it [him]self" because it was "helpful," and that one doctor said it was a good idea). The decision also makes clear that the RFC and hypothetical are based not on the ALJ's serendipitous lay judgment to leave the cane out, but rather on Dr. Bennett's expert opinion, which mentions the cane, but does not opine that it was necessary. The ALJ found Dr. Bennett's opinion persuasive and entitled to substantial evidentiary weight; he relied on it in formulating the VE hypothetical and the RFC finding. Tr. 27. Based on his conclusion that Plaintiff could perform jobs at both the light and sedentary exertional levels, the ALJ found that Plaintiff was not disabled at any relevant period. Tr. 29.

## II.    <u>Standard of Review</u>

---

from medical records generated after the initial review was completed. Thus, it is plain that each of the file-reviewing physician experts separately focused on the observations by treating sources that Plaintiff was using a cane.

[4] To be fair, Dr. Keigwin's extreme opinion – rejected by the ALJ in a finding not challenged by this appeal because of its inconsistency with his treating notes – appears to state that Plaintiff cannot walk at all. Tr. 827.

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999). Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); see also Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981).

The determination of substantiality is based upon an evaluation of the record as a whole. Brown, 71 F. Supp. 2d at 30; see also Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). Thus, the Court's role in reviewing the Commissioner's decision is limited. Brown, 71 F. Supp. 2d at 30. The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner. Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)). "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31 (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)). A claimant's complaints alone cannot provide a basis for entitlement when they are not supported by medical evidence. See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986); 20 C.F.R. § 416.929(a).

III.   **Disability Determination**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(I); 20 C.F.R. § 416.905. The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 416.905-911.

A.   **Five-Step Analytical Framework**

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § 416.920. First, if a claimant is working at a substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(b). Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled. 20 C.F.R. § 416.920(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled. 20 C.F.R. § 416.920(d). Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled. 20 C.F.R. § 416.920(e)-(f). Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted. 20 C.F.R. § 416.920(g). Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five step process applies to both DIB and SSI claims). That is, once the ALJ finds that a claimant cannot return to the prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that

exists in the local or national economy.  Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).  To meet this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.  Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).

**B.     Evaluation of Subjective Symptoms – Credibility**

When an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  See Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986); Rohrberg v. Apfel, 26 F. Supp. 2d 303, 309-10 (1st Cir. 1998).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence.  See Frustaglia, 829 F.2d at 195.  The lack of a sufficiently explicit credibility finding becomes grounds for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence so that the credibility determination is determinative, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

Guidance in evaluating the claimant's statements regarding the intensity, persistence, and limiting effects of subjective symptoms is provided by the Commissioner's 1996 ruling, SSR 96-7p, 1996 WL 374186 (S.S.A. July 2, 1996).[5]  SSR 96-7p requires that, in considering the intensity, persistence, and limiting effects of an individual's symptoms, the ALJ must consider the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information

---

[5] Since the ALJ's hearing in this case, SSR 96-7p was superseded by SSR 16-3p, which became effective on March 16, 2016.  2016 WL 1119029 (S.S.A. Mar. 16, 2016).

provided by medical sources and other persons; and any other relevant evidence in the individual's case record. 1996 WL 374186, at *2. The ALJ must also consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record. Id. In evaluating whether the medical signs and laboratory findings show medical impairments that reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis set out in Avery, 797 F.2d at 29; Gullon v. Astrue, No. 11-cv-099ML, 2011 WL 6748498, at *5-6 (D.R.I. Nov. 30, 2011). However, an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

## IV.   Analysis

### A.   The Omission of the Cane from the RFC and the VE Hypothetical

Plaintiff argues correctly that, if he cannot walk or stand without the support of a cane, the available work that he can perform may be more limited than if he did not need such an assistive device. See Holt v. Colvin, No. 1:12CV1001, 2015 WL 777657, at *4 (M.D.N.C. Feb. 24, 2015) (for claimant able to do light work, Plaintiff's prescription for cane is new evidence that is enough to trigger remand); Podolsky v. Colvin, No. 12 CIV. 6544 RA JLC, 2013 WL 5372536, at *17 (S.D.N.Y. Sept. 26, 2013) (use of a cane may impact ability to do light or medium work, though it is less likely to be impactful if claimant can perform sedentary work); SSR 96-9p, 1996 WL 374185, at *7 (S.S.A. July 2, 1996) (need to use cane may erode work base at sedentary exertional level in certain circumstances). Accordingly, there can be little doubt that the omission of such a necessary accommodation from both the VE's hypothetical and the RFC finding could be error requiring remand. 1996 WL 374185, at *7 (for claimant limited to sedentary work who needs cane, "it may be especially useful to consult a vocational resource in

order to make a judgment regarding the individual's ability to make an adjustment to other work"); see Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982) (for VE's answer to hypothetical to be relevant, question "must correspond to conclusions that are supported by the outputs from the medical authorities"); Aho v. Comm'r of Soc. Sec. Admin., CIV.A. 10-40052-FDS, 2011 WL 3511518, at *15 (D. Mass. Aug. 10, 2011) (omission of functional limitation from hypothetical warrants remand).

However, the cases and SSR 96-9p are also clear that a cane should not be woven into the RFC or the VE hypothetical just because a claimant prefers to use it or finds it helpful.  See Staples v. Astrue, 329 F. App'x 189, 192 (10th Cir. 2009) (where only reference to cane is physician note that claimant "still uses a cane to walk," court finds "no indication . . . of the medical necessity for the use of a cane;" district court's denial of remand of RFC determination that claimant could do light or sedentary work affirmed); Carreon v. Massanari, 51 F. App'x 571, 575 (6th Cir. 2002) (if cane is not "necessary device" for claimant's use, it cannot be considered exertional limitation that reduced her ability to work at light exertional level).  As SSR 96-9p states with respect to the formulation of a sedentary RFC, "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed . . . ."  1996 WL 374185, at *7.  Put differently, unless there is "medical documentation" establishing that a cane is "medically required," there is no error in the ALJ's omission of it from the hypothetical and the RFC.  Carreon v. Massanari, 51 F. App'x 571, 575 (6th Cir. 2002) ("Because the cane was not a necessary device for claimant's use, it cannot be considered an exertional limitation that reduced her ability to work ."); Mitchell v. Comm'r of Soc. Sec., No. 13CV01969, 2014 WL 3738270, at *13 (N.D. Ohio July 29, 2014) (with no

10

medical documentation establishing that claimant required cane and describing the circumstances when it was needed, no error in omission of it in VE hypothetical question).  Indeed, even if the medical evidence is mixed, there is no error in the ALJ's determination to accept substantial evidence supportive of the exclusion of the use of a cane from the claimant's RFC; such a determination falls within the ALJ's "zone of choice." Croom v. Comm'r of Soc. Sec., No. 13-CV-12355, 2014 WL 3418843, at *13 (E.D. Mich. July 14, 2014) (no error in ALJ's failure to include cane in RFC where some sources opined that "claimant requires a walking aid to reduce pain," while other opined that claimant "was able to sit and stand without assistance").

The Court's exhaustive review of the record confirms the complete absence of the required medical documentation to support that Plaintiff's use of the can was medically required; Plaintiff's testimony that an unspecified doctor told him it was a good idea is not an adequate substitute. See Godfrey v. Astrue, No. CIV.A. 10-565, 2011 WL 1831582, at *8 (W.D. Pa. May 12, 2011) (where claimant's testimony is only evidence that cane was needed, he failed to comply with SSR 96–9p requirement of "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing").  Further, both the ALJ's decision and the hearing transcript make clear that the ALJ properly considered all of the evidence regarding both Plaintiff's difficulties with his back and his use of the cane.  Confirming that he was correctly focused on the search for proof that the cane was "medically required," during the hearing, the ALJ expressly asked Plaintiff: "Is that [cane][6] prescribed?  In other words, directed by a doctor to get it or did you decide on your own that it was helpful to you?"  Plaintiff responded, "It was helpful to me.  I did it myself." Tr. 47. After considering all of that evidence, the ALJ formulated his finding about Plaintiff's physical RFC by giving "substantial evidentiary

---

[6] There is an obvious transcription error in that the word "pain" appears in place of "cane," which is plainly intended.

weight" to the expert opinion from Dr. Bennett, who also considered the report that Plaintiff "ambulate[d] with a cane," Tr. 110, yet did not opine that Plaintiff's cane was medically required.  See 20 C.F.R. § 416.927(c)(6); 20 C.F.R. § 416.927(e)(2)(i).

There is no need to go further.  There is no error in the ALJ's omission of the cane from either the VE hypothetical or from the RFC.

### B.     Credibility

Plaintiff's alternative argument challenges the ALJ's credibility finding.  The argument rests on the ALJ's finding of secondary gain.  Tr. 26.  Plaintiff fails to note that the ALJ's reference to secondary gain appears at the tail-end of almost three single-spaced pages that lay out a detailed analysis of Plaintiff's credibility, which is properly grounded in SSR 96-7p and Avery, 797 F.2d 19.  This exegesis juxtaposes the evidence in the record with Plaintiff's statements about the nature, location and other characteristics of the pain, including its effect on him; it examines the evidence of the restrictions in Plaintiff's activities of daily living, the treatments and medications offered to and accepted by Plaintiff, and the objective clinical findings.  Tr. 24-26.  Based on this thoughtful and thorough analysis, I find that Plaintiff is simply wrong in positing that the ALJ exclusively focused on secondary gain and failed to perform the pain/credibility analysis mandated by SSR 96-7p[7] and Avery, 797 F.2d 19.  To the contrary, and wholly apart from the reference to secondary gain, the ALJ's credibility finding is robust, well-grounded in substantial evidence and entitled to this Court's deference.  Howcroft v. Colvin, C.A. No. 15-201S, 2016 WL 3063858, at *14 (D.R.I. Apr. 29, 2016), adopted, C.A. No. 15-201 S, 2016 WL 3072254 (D.R.I. May 31, 2016) (when ALJ's credibility finding is still adequately supported by substantial evidence when erroneous findings are disregarded, errors are

---

[7] Plaintiff incorrectly grounded his argument on the superseding ruling, SSR 16-3p, which was not in effect at the time of the ALJ's decision; the Commissioner's opposition reoriented the Court's focus to SSR 96-7p.  Plaintiff's reply acquiesces by silence.

harmless); Beaudet v. Colvin, No. CA 14-112 S, 2015 WL 5510915, at \*16-17 (D.R.I. Sept. 16,

2015) (no remand when ALJ's credibility finding is neither "terse nor sparse," even after

exclusion of erroneous grounds).  Mindful that it was the ALJ who "observed [Plaintiff],

evaluated his demeanor, and considered how [his] testimony fit in with the rest of the evidence,"

Frustaglia, 829 F.2d at 195, I do not recommend remand for a do-over of the credibility finding.

Suranie v. Sullivan, 787 F. Supp. 287, 289 (D.R.I. 1992).  Any error in the ALJ's reliance on

secondary gain is harmless.

## V.    Conclusion

Based on the foregoing analysis, I recommend that Plaintiff's Motion to Reverse the

Decision of the Commissioner (ECF No. 12) be DENIED and Defendant's Motion for an Order

Affirming the Decision of the Commissioner (ECF No. 14) be GRANTED.  Any objection to

this report and recommendation must be specific and must be served and filed with the Clerk of

the Court within fourteen (14) days after its service on the objecting party.  See Fed. R. Civ. P.

72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes

waiver of the right to review by the district judge and the right to appeal the Court's decision.

See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v.

Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
February 15, 2017